IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRADLEY STEPHEN HEDGES,       )
                              )
         Petitioner,          )
                              )
    v.                        )        Civil Action No. 2:09cv1000-WKW
                              )                    (WO)
UNITED STATES OF AMERICA,     )
                              )
         Respondent.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 28 U.S.C. § 2255 motion has been submitted on the pleadings, written submissions, and an evidentiary hearing. After due consideration, including scrutiny of the record in this case, the court concludes that no relief is warranted.

## I.   INTRODUCTION

On August 13, 2008, the petitioner, Bradley Stephen Hedges ("Hedges"), appeared before this court and, pursuant to a plea agreement, pled guilty to conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371, and aiding and abetting a bank robbery committed by force or violence, in violation of 18 U.S.C. §§ 2 & 2112(a). Following a sentencing hearing on October 29, 2008, the district court sentenced Hedges to 30 months in prison for each count, the terms to run concurrently. No appeal was filed.[1]

On October 28, 2009, Hedges, proceeding *pro se*, filed a 28 U.S.C. § 2255 motion

---

[1] The plea agreement contained an appeal/post-conviction waiver with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.

asserting the following claims:

1.   His counsel rendered ineffective effective assistance by–

(a)   failing to file a direct appeal although instructed to do so by Hedges;

(b)   failing to file a motion to suppress his statements to police;

(c)   failing to properly negotiate the plea agreement with regard to a "minor role" reduction in his offense level;

(d)   including an ambiguous appeal waiver in the plea agreement;

(e)   failing to investigate Hedges's mental and emotional condition;

(f)   failing to investigate and call witnesses to testify regarding mitigating factors, including Hedges's mental history, at sentencing; and

(g)   failing to object to the district court's brief discussion of the "coercion and duress" motion for downward departure at the sentencing hearing and to sufficiently explain to the court the grounds on which a departure was warranted.

2.   His guilty plea was not knowing and voluntary because his counsel–

(a)   told him that a suppression motion had been filed and denied, when no suppression motion had in fact been filed;

(b)   assured him that a two-point reduction in his offense level, based on his role as a minor participant in the offense, would be incorporated

2

into his plea agreement; and

    (c)    allowed an ambiguous appeal waiver to be part of his plea agreement.

3.    The district court violated his due process rights by–

    (a)    truncating the sentencing hearing because of a prior engagement; and

    (b)    failing to properly consider the "coercion and duress" motion for downward departure at the sentencing hearing.

4.    The probation officer in his case violated his rights by–

    (a)    failing to meet with him in preparing the presentence investigation report ("PSI");

    (b)    failing to address his mental and emotional health in the PSI;

    (c)    failing to use the Montgomery District Probation Office form in preparing the PSI; and

    (d)    improperly including his codefendant's work history in the PSI.

Doc. No. 1 at 2-20.[2]

    The government argues that Hedges's substantive claims are barred from review by the waiver provision contained in the plea agreement.  Doc. No. 21 at 7-10.  In addition, the

---

[2] The claims in Hedges's motion overlap in places, are repetitive, and are not always presented in a clear and logical fashion.  For organizational and analytical purposes, this court has recast some of Hedges's claims in a more appropriate presentation.  Unless otherwise indicated, references to document numbers in this Recommendation are to those assigned by the Clerk to pleadings docketed in the instant action.  Page references in the pleadings for this action are to those assigned by CM/ECF.

government argues that Hedges's substantive claims are procedurally barred because they were not raised in a direct appeal. *Id*. at 10-12. The government further argues that even if the substantive claims are not barred, they are meritless and entitle Hedges to no relief. *Id*. at 12-14. Finally, the government argues that all of Hedges's claims of ineffective assistance of counsel lack merit and rest on allegations that fail to establish either deficient performance or prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id*. at 14-29.

Hedges was afforded an opportunity to respond to the government's submissions and has done so. Doc. Nos. 12 & 33. This court ascertained the need for an evidentiary hearing, with specific concern for Hedges's claim that his counsel failed to comply with his instructions to file a direct appeal. Doc. No. 41. Accordingly, this court appointed counsel to represent Hedges at the evidentiary hearing with regard to this issue. The evidentiary hearing was held on February 16 and 22, 2012.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C.

§ 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

## B.    Ineffective Assistance of Counsel

### 1.    *Standard of Review for Ineffective Assistance Claims*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006).  Under *Strickland*'s two-part test, a petitioner must demonstrate (1)

5

that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)

6

("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 2.    *Failure to File Notice of Appeal as Directed*

Hedges contends that his trial counsel, Raymond Hawthorne, rendered ineffective assistance by failing to file a direct appeal on his behalf after he instructed him to do so. Doc. No. 1 at 7.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir.

7

2005) (citing *Flores-Ortega*, 528 U.S. at 477).  In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing.[3]  *Flores-Ortega*, 528 at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice.").  Even if a client has not made a specific request of his counsel to file an appeal, counsel generally has a duty to "consult with the defendant about an appeal[4] when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal),[5] or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

---

[3] These rules apply with equal force when a petitioner waives some but not all of his appellate rights through a plea agreement.  *Gomez-Diaz*, 433 F.3d at 793–94.

[4] The Supreme Court defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

[5] In determining whether a reasonable defendant would have wanted to appeal, the Supreme Court provided:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.  Only by considering all relevant factors in a given case can a court properly determine whether a . . . particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 486.

8

At the evidentiary hearing on his § 2255 motion, Hedges testified that immediately after his sentencing hearing and before leaving the courtroom, he informed Hawthorne that he wanted to appeal.  Doc. No. 61 at 23 & 47.  According to Hedges, Hawthorne had assured him before the change of plea hearing that the government had agreed during plea negotiations not to object to a motion for downward departure based on coercion and duress that Hawthorne intended to file on his behalf.  *Id*. at 17-18 & 27-29.  However, the government did in fact object to the downward-departure motion at sentencing, and the district court ultimately denied the motion.  Hedges testified that he asked Hawthorne to file an appeal because he wanted to challenge the circumstances surrounding the denial of the downward-departure motion.  *Id*. at 22-23 & 39.  He stated that he was "very adamant" when directing Hawthorne to file an appeal.  *Id*. at 24 & 38.

Hedges testified that after he informed Hawthorne at the sentencing hearing of his desire to appeal, Hawthorne told him that he would visit him at the jail that afternoon to discuss the matter.  Doc. No. 61 at 23-24.  However, Hawthorne did not come to the jail to see him and did not to get in touch with him again.  *Id*.  Hedges testified that when Hawthorne failed to come to see him at the jail, he tried to contact Hawthorne through phone calls placed from the jail, but Hawthorne did not answer his phone.  *Id*. at 24.  Hedges stated that his mother then tried "a few times," without success, to contact Hawthorne to tell him, "'[H]ey, look, you need to appeal.'"  *Id*. at 23-24.  He stated that his mother finally got in touch with Hawthorne "about two weeks later" and told Hawthorne that he was attempting

9

to get in touch with him about filing an appeal.  *Id*. at 24 & 38-39.  Hedges stated that

Hawthorne informed his mother that no appeal would be filed "based on the plea agreement"

and because "there was nothing to appeal."  *Id*. at 39.

According to Hedges, sometime later, when conducting legal research in prison, he

discovered case law indicating that it was possible to appeal a district court's denial of a

motion for downward departure, even in the face of an appeal waiver, if the court had

erroneously believed it did not have discretion authorizing it to grant the downward-

departure motion.  Doc. No. 61 at 35 & 38.  Hedges acknowledged that he was unaware of

this basis for an appeal at the time of sentencing; however, he maintained that even at

sentencing he knew that the proceedings "did not go down right" and that "there was

something in there that [he] would be able to appeal."  *Id*. at 38 & 40.

The petitioner's mother, Elizabeth Hedges, also testified at the evidentiary hearing.

She stated that she retained Hawthorne to represent the petitioner and paid Hawthorne's fee

for the case, which totaled $13,000.  The fee was paid before the petitioner pled guilty.  Ms.

Hedges testified that at the time she paid Hawthorne, she believed his representation would

include the filing of any appeal.[6]  She acknowledged, however, that she understood the

petitioner later waived his right to appeal, with limited exceptions, under the plea agreement.

She stated that she talked to Hawthorne approximately a month after sentencing in an effort

---

[6] In his own testimony, the petitioner maintained that his mother "prepaid for an appeal" in his case and that part of Hawthorne's fee was for his representation through the appeal process.  Doc. No. 61 at 10-12.

to obtain a partial refund of his fee because an appeal had not been filed.  Ms. Hedges testified that she did not actually instruct Hawthorne at any time to file an appeal, because the petitioner told her that he was going to tell Hawthorne he wanted the appeal filed.  She acknowledged that she was currently involved in a civil lawsuit against Hawthorne in an effort to obtain a partial refund of the money she paid him to represent the petitioner, and stated that the outcome of the petitioner's § 2255 action would have some bearing on how she intended to proceed in her civil suit against Hawthorne.

In his testimony at the evidentiary hearing, Hawthorne stated unequivocally that Hedges never instructed him at any time to file an appeal and never evidenced any interest in appealing.  Doc. No. 61 at 56 & 59-60.  Hawthorne testified that, in preparation for the sentencing hearing, he advised Hedges of his appeal rights and discussed the effect of the waiver provision in the plea agreement, including its effect on Hedges's appeal rights.  *Id*. at 52 & 55-58.  He testified that he did not talk to Hedges about his appeal rights after the sentencing hearing, nor did he meet with Hedges again after the hearing.  *Id*. at 56. Hawthorne stated that his biggest concern going into the sentencing hearing was that the district court would reject the plea agreement as being too lenient toward Hedges.  *Id*. at 58. According to Hawthorne, Hedges appeared to be "real pleased" with the results of the sentencing hearing.  *Id*. at 60.  Hawthorne maintained that he did not have a conversation with Hedges's mother immediately after the sentencing hearing or communicate with her at any time after sentencing, "until two or three years later after the fact," when he received a

11

letter from Ms. Hedges in which she requested a refund of part of his fee because an appeal was not filed." *Id*. at 57-60.  He testified that Ms. Hedges never asked him to file an appeal on Hedges's behalf.  *Id*.  He stated that he never promised Ms. Hedges or the petitioner that he would appeal the case.  *Id*. at 59.  He further stated that he never had a discussion with Ms. Hedges or the petitioner about part of his fee going toward an appeal.  *Id*.

Peter Bush, an attorney who assisted Hawthorne with Hedges's case, also testified at the evidentiary hearing.  Bush stated that he was present in court during both the change of plea hearing and Hedges's sentencing, and that he was present earlier on various occasions when Hawthorne discussed the case with Hedges.  Doc. No. 61 at 63-64.  Bush specifically recalled accompanying Hawthorne to visit Hedges at the jail, sometime before the change of plea hearing, when both he and Hawthorne explained to Hedges the effect of the appeal waiver contained in his plea agreement.  *Id*. at 64.  According to Bush, Hedges never indicated during this discussion that he did not understand the appeal waiver or any other term of the plea agreement.  *Id*. at 64-65.  Bush testified that Hedges did not ask him to file an appeal on his behalf and that he never heard Hedges ask Hawthorne to file an appeal.  *Id*. at 67.  He stated that he did not recall ever being "out of earshot" of Hawthorne in the courtroom after the sentencing hearing.  *Id*.  Like Hawthorne, Bush testified that Hedges had appeared to be happy with the results of the sentencing hearing.  *Id*. at 66.

Having considered the testimony of the witnesses in light of all the facts, taking into account their interests in the outcome of the proceedings, the consistencies or inconsistencies

12

in their testimony, and their demeanor on the stand, the court finds the preponderance of credible evidence shows that Hedges never expressly requested that Hawthorne file an appeal of his case.  As noted above, Hedges testified at the evidentiary hearing that he asked Hawthorne to file an appeal immediately after the sentencing hearing because he wished to challenge the circumstances surrounding the denial of his downward-departure motion, this despite the appeal waiver contained in the plea agreement, which barred Hedges from appealing the sentence imposed by the district court.  In his testimony, Hedges characterized these circumstances as the "confusion during the sentencing concerning the downward departure and whether it should be applied or not."  Doc. No. 61 at 22 & 39.  During parts of his testimony at the evidentiary hearing, Hedges appeared to assert that "the confusion" at sentencing related to the question of whether the government had indeed agreed not to object to the motion for downward departure.  *Id*. at 17-18 & 27-29.  During other parts of his testimony, however, Hedges appeared to maintain that the appealable issue presented by his sentencing hearing was whether the district court erroneously believed it lacked authority to depart downward.  *Id*. at 32-35, 40-41 & 43-44.  Neither of these purported grounds for challenging his sentence finds substantial support in the record.  Nothing in the plea agreement indicated that the government would not object to a downward-departure motion (or indeed even referred to the downward-departure motion), and Hedges does not present evidence demonstrating that he had a reasonable basis for believing the government would not object to such a motion.  As for any off-the-record assurances to this effect, Hedges

13

stated under oath during the change of plea hearing that his guilty plea had not been induced by any promises or assurances not contained in the plea agreement. Doc. No. 4-1 at 5-6. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This court finds incredible Hedges's testimony at the evidentiary hearing that, for purposes of his statements during the change of plea colloquy, he did not consider the government's purported agreement not to object to any downward-departure motion to constitute a "promise" or assurance.[7] Doc. No. 61 at 26-29. This court also finds Hedges's contention that the district court evidenced a belief that it lacked authority to grant a downward departure to be wholly unsupported by the record and a self-serving interpretation of the proceedings crafted by Hedges well after the sentencing hearing[8] – after he had conducted legal research in prison and come to believe he had found a basis for getting around the clear language of the appeal waiver. Thus, this court does not find credible Hedges's testimony that he instructed Hawthorne immediately after the sentencing hearing to file an appeal; conversely, the court credits Hawthorne's testimony that no such instruction or request was made by Hedges.[9] Hedges also testified that, about

_____

[7] For his part, Hawthorne testified, credibly, that although he discussed with the government the possibility of Hedges receiving a sentence of house arrest, there was never any agreement that Hedges would indeed receive house arrest, and his communications to Hedges regarding the matter consisted of his telling Hedges "that we were arguing for house arrest." Doc. No. 61 at 53.

[8] *See* Part II.B.7 of this Recommendation, *infra*.

[9] In making its credibility determination, the court recognizes, of course, that it is improper to determine credibility based on the "status" of a witness. *See United States v. Ramirez-Chilel*, 289

(continued...)

14

two weeks after sentencing, his mother told Hawthorne that he was attempting to get in touch with Hawthorne about filing an appeal.  Ms. Hedges testified that although she spoke to Hawthorne, she never actually instructed him to file an appeal.  The court finds credible Hawthorne's testimony that neither Hedges nor his mother at any time asked him to file an appeal.[10]

Even if Hedges did not specifically instruct Hawthorne to file an appeal, Hawthorne had a duty to consult with Hedges about an appeal if Hedges reasonably demonstrated an interest in appealing or if a rational defendant in Hedges's position would have sought an appeal.  *Flores-Ortega*, 528 U.S. at 480.  Because the plea agreement contained an appeal waiver and both Hawthorne and Bush testified (credibly) that they explained to Hedges the effect of the waiver provision on his appeal rights prior to entry of his guilty plea,[11] the court finds that Hedges's counsel satisfied the requirements of *Flores-Ortega* by adequately consulting with Hedges about the advantages and disadvantages of filing an appeal.

Even assuming that counsel's presentencing discussions with Hedges did not satisfy

---

[9](...continued)
F.3d 744, 749 (11th Cir. 2002).  Thus, neither Hedges's status as a convicted felon nor Hawthorne's status as a lawyer is determinative.

[10] The court notes that Ms. Hedges actually conceded a potential financial interest in the success of Hedges's § 2255 claims against Hawthorne when she testified that the outcome of the § 2255 proceedings would influence her decision to pursue her civil suit against Hawthorne, in which she was seeking to recover part of the fee she had paid to Hawthorne to represent Hedges.

[11] During the change of plea colloquy, Hedges represented to the court that counsel had discussed the plea agreement with him and that he understood the terms of the plea agreement and the waiver provision contained in the plea agreement.  Doc. No. 4-1 at 5-9.

the duty to consult, the court finds that Hawthorne had no duty to consult with Hedges about appealing, because the evidence indicates that Hedges did not reasonably demonstrate an interest in appealing and a rational defendant in Hedges's position would not want to appeal. *Flores–Ortega*, 528 U.S. at 480.  Hedges testified that the only time he discussed an appeal with Hawthorne was immediately after the sentencing hearing, when, he says, he told Hawthorne to file an appeal.  However, as indicated above, the court does not find Hedges's testimony in this regard to be credible.  The court does not find any credible evidence in the record indicating that Hedges ever evidenced to Hawthorne an interest in appealing. Further, a rational defendant in Hedges's position would not want to appeal where, as here, he received a favorable sentence, pursuant to a negotiated plea agreement, at the low end of the applicable guideline range and (as discussed *infra* in this Recommendation) there were no non-frivolous grounds for appeal and Hedges forfeited his right to appeal a guideline sentence[12] and then received a guideline sentence adopting all of the government's sentencing recommendations embodied in the plea agreement.  *Flores–Ortega*, 528 U.S. at 480 (considering as relevant factors whether the conviction follows a guilty plea and whether the plea expressly waived some appeal rights).  Absent any evidence of record that Hedges actually expressed an interest in appealing or suggesting that a rational defendant would have wanted to appeal, Hawthorne had no duty to consult with Hedges about

---

[12] As noted in Part II.B.5 of this Recommendation, *infra*, there was nothing ambiguous or unclear about the waiver provision in the plea agreement.

appealing. *Flores–Ortega*, 528 U.S. at 480.

For all the reasons set forth above, this court finds that Hedges is not entitled to any relief based on his claim that his counsel was ineffective for failing to file a direct appeal.

### 3.      Failure to File Suppression Motion

Hedges contends that Hawthorne was ineffective for failing to file a suppression motion. Doc. No. 1 at 3-4. In this regard, he maintains that his codefendant, Carl Kahler, coerced him into making post-arrest statements to police and that Hawthorne should have filed a motion to suppress the statements. *Id*.

As the government correctly observes, Hedges's suppression argument is misplaced, because his claim of coercion is based on alleged coercion by Kahler, and not by the police. *See* Doc. No. 21 at 18. For a waiver of *Miranda* rights to be considered involuntary, "there must be coercion by an official actor." *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995); *see Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986). Therefore, a suppression motion on the ground propounded by Hedges would have been without merit.

Where a petitioner argues that his conviction should be set aside for ineffective assistance of counsel for failure to file a motion to suppress evidence, the petitioner must establish that he was prejudiced by the failure. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (defendant must establish prejudice where counsel failed to file a motion to suppress evidence); *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994) (defendant is not prejudiced by counsel's failure to file motion to suppress if it would have

17

been denied).  Hedges fails to demonstrate prejudice here, and, thus, he is not entitled to any relief based on this claim of ineffective assistance of counsel.[13]

Furthermore, Hedges is not entitled to relief based on his claim that his guilty plea was unknowing and involuntary because he believed Hawthorne had filed a suppression motion when in fact Hawthorne had not done so.[14]  Doc. No. 1 at 16-17.  Not only would a suppression motion premised on the ground now urged by Hedges have lacked merit, but Hedges does not allege that, but for Hawthorne's failure to file a suppression motion, he would have insisted on going to trial rather than pleading guilty.  The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  It therefore falls upon a petitioner alleging ineffective assistance in this context to establish both that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  In other words, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial."  *Id*.  Hedges does not make this showing.

### 4.    *Failure to Properly Negotiate Plea Agreement: "Minor Role"*

---

[13] The court notes that, even excluding any statements Hedges made to law enforcement, there was overwhelming evidence of his participation in the bank robbery with which he was charged.

[14] In an affidavit filed with this court, Hawthorne states that he did not inform Hedges that a suppression motion was filed, or would be filed, on his behalf.  Doc. No. 4 at 3-4.

*Reduction*

Hedges claims that Hawthorne rendered ineffective assistance of counsel by failing to "properly negotiate his plea agreement."  Doc. No. 1 at 4-5.  In this regard, he contends that Hawthorne failed to object when a two-point "minor role" reduction allegedly promised by the prosecutor during plea negotiations was not made a part of the plea agreement.  *Id*.

Contrary to Hedges's claim, the e-mail from the prosecutor to Hawthorne on which Hedges relies in asserting that he was promised a two-point reduction in his offense level if he pled guilty does not contain a promise that Hedges will receive a two-point reduction. Instead, the prosecutor indicates in the e-mail that his preliminary calculation of Hedges's guideline range (set forth in the e-mail) depended on Hedges "receiving two levels off for having a 'mitigating role' in the offense, and a two-level increase for theft from a financial institution."  Doc. No. 1-4 at 2.  The prosecutor notes in the e-mail that if the probation office and/or the district court "reaches a different decision on which specific offense characteristics should apply," Hedges's actual guideline range could be longer or shorter. *Id*.  Moreover, and more to the point, Hedges *did* receive a two-point reduction in his offense level, pursuant to U.S.S.G. § 3B1.2(b),[15] based on his role as a minor participant in the offense.  Doc. No. 22-1 (PSI) at p. 5, ¶ 16.  Accordingly, there was no basis for Hawthorne to assert an objection premised on an allegedly unfulfilled promise.  Counsel is

---

[15] U.S.S.G. § 3B1.2(b) provides that a defendant's offense level shall be decreased by two levels if it is determined he was "a minor participant in any criminal activity."

19

not ineffective for failing to argue a meritless issue.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Hedges is not entitled to any relief based on this claim.[16]

### 5.      *"Ambiguous" Appeal Waiver*

Hedges claims that Hawthorne rendered ineffective assistance of counsel by allowing an ambiguous appeal waiver to be part of his plea agreement.  Doc. No. 1 at 5.  In this regard, he contends that the plea agreement was "unclear" as to whether the appeal waiver extended to the district court's ruling on his U.S.S.G. § 5K2.12 motion for a downward departure based on coercion and duress.[17]  *Id*.

There is no basis for Hedges's contention that the appeal waiver set forth in the plea

---

[16] For the same reasons, Hedges is not entitled to relief based on his claim that his guilty plea was unknowing and involuntary for having been induced by false assurances from Hawthorne that he would receive the "minor role" reduction in his offense level.  *See* Doc. No. 1 at 17.

[17] U.S.S.G. § 5K2.12 provides:

Coercion and Duress (Policy Statement)

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward.  The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.  Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.  Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

agreement was ambiguous. The plea agreement, which Hedges signed, plainly stated that Hedges was waiving his rights to appeal or collaterally attack his sentence and conviction except on the grounds of ineffective assistance of counsel and prosecutorial misconduct. Doc. No. 21-4 at 3-4. Nothing in the waiver provision mentioned a § 5K2.12 motion or suggested that the district court's ruling on such a motion would be appealable. Moreover, at the change of plea hearing, the court specifically questioned Hedges concerning his understanding of the waiver provision, and Hedges acknowledged in open court that he understood the waiver. Doc. No. 4-1 at 8-9. In addition, the court specifically asked Hedges if he fully understood the terms of his plea agreement, and Hedges stated under oath that he did. *Id*. at 5. Finally, during the plea colloquy, Hedges represented to the court that his guilty plea had not been induced by any promises or assurances not contained in the plea agreement. *Id*. at 5-6. "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Weighing the conclusory (and self-serving) assertions in Hedges's § 2255 motion against the relevant portions of the record, this court finds that Hedges has not overcome the

"formidable barrier" created by his sworn statements at his plea hearing. As indicated above, moreover, there was nothing ambiguous about the appeal waiver contained in the plea agreement. Consequently, Hedges is not entitled to relief based on his claim that Hawthorne was ineffective for allowing an ambiguous appeal waiver to be part of his plea agreement. Likewise, there is no merit to Hedges's claim that the guilty plea was rendered unknowing and involuntary because of ambiguities in the plea agreement and appeal waiver. *See* Doc. No. 1 at 17-18.

### 6. *Failure to Investigate Mental and Emotional Condition and to Investigate and Call Witnesses Regarding Mitigating Factors*

Hedges contends that Hawthorne rendered ineffective assistance of counsel by failing to investigate his mental and emotional condition and by failing to investigate and call witnesses to testify regarding mitigating factors, including his mental history, at sentencing. Doc. No. 1 at 5-7. Hedges suggests that evidence in this regard would have bolstered his argument that he was entitled to a downward departure based on "coercion and duress." *Id*. *See* U.S.S.G. § 5K2.12.

In an affidavit filed with this court, Hawthorne addresses Hedges's claim as follows:

> 10. Petitioner asserts that there was a "Failure to investigate and call forth pertinent witnesses and mitigative factors for sentencing." . . . Mr. Bush and I underwent an exhaustive process of investigating all evidence, witnesses, and issues of law and fact in this case. Petitioner is incorrect in alleging that there was any failure to investigate or call forth pertinent witnesses and mitigating factors for sentencing. His error is evident in the proceedings by which Petitioner entered his guilty plea and from the applicable sentencing guidelines without consideration of the mitigating

circumstances of his case.

11.  Each and every mitigating factor stated in Petitioner's Section 2255 Motion was discussed with the United States Attorney's office in the plea negotiation process, and in the result by which Petitioner received favorable terms in light of his previous offense.

12.  Mr Bush and I made an exhaustive investigation into the mental and emotional condition of Petitioner, and his susceptibility to "coercion or duress."  This factor was a major issue by which we were successful in negotiating a guilty plea.

. . . .

15.  There is no basis to suggest that the actions of myself and Mr. Bush were unreasonable "by allowing misinformation and omissions of mental and emotional history to be used by [the] sentencing judge as alleged in Petitioner's Section 2255 Motion.  These factors were thoroughly investigated and discussed with the United States Attorney's Office, which resulted in the plea as the record confirms."

Doc. No. 4 at 4-5.

        a.      <u>Failure to investigate mental and emotional condition</u>

In support of his claim that Hawthorne failed to investigate and ignored opportunities to use his mental condition and history to seek sentence mitigation based on coercion and duress, Hedges maintains that he told Hawthorne he suffered from "panic and anxiety issues" stemming from his troubled relationship with his father, attributable in part, he says, to his father's alcoholism and psychological problems.  Doc. No. 1 at 6.  Hedges also submits an affidavit from his mother, Elizabeth Hedges, in which she states that Hedges's father emotionally neglected Hedges and was "emotionally unavailable" to him during his

formative years.  Doc. No. 1-3 at 2.  Hedges's sister, Aleisha Elliot, also provides an affidavit, in which she states that Hedges's father was diagnosed with bipolar disorder and PTSD (post-traumatic stress disorder) from his tour in Vietnam and was a "poor role model" whose "behavior and alcoholism [greatly] affected our family."  Doc. No. 1-6 at 2. However, Elliot also opines that Hedges's father's alcoholism should not be used as way to excuse any of Hedges's choices.  *Id*.

The facts alleged by Hedges in his § 2255 motion, lamentable though they may be, do not rise to the level of "extraordinary" so as to suggest his particular vulnerability to the influences of others (specifically, his codefendant) and do not present, in this court's view, compelling grounds to see his conduct as coerced rather than as resulting from independent thinking and conscious wrongdoing.  Hedges has not demonstrated a documented history of serious mental or emotional issues or alleged facts sufficient to establish a mental or emotional condition justifying a reduced sentence based on coercion and duress (or on any other basis).[18]  Accordingly, he has not demonstrated any prejudice stemming from Hawthorne's allegedly deficient performance in this regard.  Therefore, he is not entitled to

---

[18] The rules applicable to 28 U.S.C. § 2254 petitions and § 2255 motions "mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under *Federal Rule of Civil Procedure* 8(a). . . .  The reason for the heightened pleading requirement – fact pleading – is obvious.  Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards . . . . Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim."  *Borden v. Allen*, 646 F.3d 785, 810 & 810 n.31 (11th Cir. 2011).

relief based on this claim.

          b.      <u>Failure to investigate and call witnesses</u>

     As the government correctly observes, with the possible exception of Hedges's

codefendant Carl Kahler, Hedges does not specifically identify the persons Hawthorne

should have, but failed to, investigate and to call as witnesses at sentencing.[19]  Doc. No. 21

---

    [19] On October 21, 2008 (a little over a week before Hedges's sentencing hearing), Hawthorne filed a motion for downward departure due to coercion and duress.  Doc. No. 21-8.  That motion, in pertinent part, provided as follows:

    1.      The Defendant qualifies for a reduction in his sentence pursuant to U.S.S.G. § 5K2.12, in that the crime in which he participated originated in the mind of his co-defendant, Carl Raymond Kahler, and his aiding in the commission of the crime was obtained by actual physical violence and threats of violence upon him and his family.

    2.      Shortly after the arrests of the Defendant and his co-defendant Carl Raymond Kahler, the latter described to authorities the drug-fueled physical coercion and threats of death to which he submitted the Defendant in making him a forced, unwilling accomplice in the robbery.

    3.      The co-defendant Kahler was sentenced before this Honorable Court on 22 July 2008; at that time he testified that he did indeed force Hedges to assist in the commission of the crime.

    4.      The Defendant was convicted of a prior bank robbery in 2002; he also completed his sentence and probationary term in an exemplary manner, in 2006.

    5.      The instant bank robbery was conceived solely in the drug-addled mind of Carl Kahler, who, with knowledge of the Defendant's prior involvement in a bank robbery, forced him through threats, intimidation, physical violence, and threats against the safety of Defendant Hedges' family, to aid him in his own planned robbery.

    6.      The Defendant tried unsuccessfully numerous times to persuade

(continued...)

at 23.  Moreover, and equally as important, Hedges fails to show that such witnesses would indeed have been willing to testify on his behalf or that they would have presented testimony that would have altered the outcome of his sentencing proceeding.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."[20]  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

---

[19](...continued)
Kahler to abandon the plan.

7.      Carl Kahler, the co-defendant, has composed a lengthy letter of confession in which he completely exonerates the Defendant, and describes the threats and coercion with which he secured the Defendant's half-hearted cooperation. (Attached as Defendant's Exhibit 2).

8.      In contrast, the Defendant has always been willing to fully cooperate with the Government in its prosecution of Kahler.

9.      WHEREFORE, these premises considered, the Defendant in the above referenced action respectfully requests that this Honorable Court will reduce his offense level at sentencing by any degree which it feels justified for coercion and duress as contemplated by U.S.S.G. § 5K2.12.

Doc. No. 21-8 at 1-2.  The transcript of the sentencing hearing reflects that the district court fully considered Kahler's "confession letter," as well as Kahler's in-court statements, in denying Hedges's downward-departure motion.  *See* Doc. No. 4-2 at 7.

[20] If the persons Hedges believes Hawthorne should have called to testify at sentencing are his mother and sister, this court has found that the matters attested to by Hedges's mother and sister in their affidavits would not have entitled Hedges to a downward departure based on coercion and duress.  *See* Part II.B.6.a, *supra*.

Hedges fails to demonstrate any prejudice resulting from Hawthorne's performance as to this issue. *See Strickland*, 466 U.S. at 687. Therefore, no relief is available under § 2255 based on this claim of ineffective assistance of counsel.

> **7.    Failure to Object to Court's Curtailed Discussion of Downward-departure Motion and to Sufficiently Explain to the Court the Grounds on Which a Departure Was Warranted**

Hedges maintains that Hawthorne rendered ineffective assistance of counsel by failing to object to the district court's purportedly truncated discussion of his "coercion and duress" motion for downward departure at the sentencing hearing. Doc. No.1 at 10-16. According to Hedges, the district court curtailed his sentencing hearing because of a prior engagement, and thus did not give proper consideration to his downward-departure motion. *Id*. In addition, Hedges maintains that the district court failed to understand its authority to grant a downward departure based on coercion and duress. *Id*. In this regard, he also contends that Hawthorne failed to sufficiently explain to the court the grounds on which a departure was warranted.[21] *Id*.

First, nowhere in the record is there evidence that the district court placed time constraints on the parties during the sentencing hearing; nor is there evidence that the district court curtailed the hearing because of a prior engagement. Hedge's claim in this regard is

_____

[21] This court's discussion of Hawthorne's alleged ineffective assistance of counsel also encompasses Hedges's separate, substantive claims that the district court violated his due process rights by (a) truncating the sentencing hearing because of a prior engagement and (b) failing to properly consider his "coercion and duress" motion for downward departure at the sentencing hearing. As indicated below, this court finds those substantive claims to lack merit.

baseless.  Second, Hedges attempts to turn what is essentially his disagreement with the manner in which the district court exercised its discretion when ruling on his downward-departure motion into a claim that the district court erroneously believed it lacked discretionary authority to depart downward.  This claim is not well taken.  As noted above in this Recommendation, Hawthorne filed a motion for downward departure due to coercion and duress more than a week before Hedges's sentencing hearing.  Doc. No. 21-8.  The motion fully and clearly set out the grounds on which a downward departure was being sought.  *Id*.  Hawthorne presented arguments in support of the motion at the sentencing hearing, and Hedges testified at the hearing concerning the circumstances of the alleged coercion by Kahler.  Doc. No. 4-2 at 7-14.  The transcript of the sentencing hearing reflects that, in addition to hearing argument from Hawthorne and testimony from Hedges, the district court also considered Kahler's confession letter, as well as statements made by Kahler during his own criminal proceedings.  *Id*. at 7.

In arguing against a downward departure, the government contended that the evidence did not substantiate a credible threat of violence by Kahler, that Hedges had opportunities to remove himself from the planned bank robbery and from any danger but did not avail himself of those opportunities, and that Hedges had a chance to alert the police of Kahler's actions before the bank robbery took place but failed to do so.[22]  *Id*. at 17.  The

---

[22] As noted above in this Recommendation, Hedges testified at the evidentiary hearing on his § 2255 motion that Hawthorne assured him before he entered his guilty plea (and that, consequently, (continued...)

district court apparently agreed that the threats of violence against Hedges were not credible and clearly indicated that it believed Hedges failed to avail himself of reasonable opportunities to resign from the criminal enterprise before the bank robbery was carried out.[23]   When setting forth various factors that militated against granting a downward departure, the district court stated, in pertinent part:

> And the length of time that transpired between the initial conversations during the holidays [when Kahler first began to pressure Hedges to participate in the bank robbery] and when it was done and the fact that you had to drive so many miles to do it and that you carried it off, having known that the probabilities of success were nil, just based on your personal experience.  So I find it to be credible that Mr. Kahler would volunteer in open court that you shouldn't be responsible; but on the other hand, I find that even though it may have been halfhearted, it was your whole body.  It was your van.  It was you who did it, who participated.
>
> . . . . I find that the fact that you have a prior bank robbery conviction and the length of time that transpired during the planning of this, at least in my mind, and the distance involved operates against you, as I said.

*Id*. at 19-22.

The record reflects that the district court was well aware of Kahler's alleged coercion

---

[22](...continued)
it was his understanding) that the government would not object to or argue against a downward departure based on coercion and duress at sentencing.  As also noted above, Hawthorne testified that he did not make such an assurance to Hedges, and nothing in the plea agreement indicated that the government would not object to a downward-departure motion.  Further, as also noted in this Recommendation, Hedges stated under oath during the change of plea hearing that his guilty plea had not been induced by any promises or assurances not contained in the plea agreement.

[23] An inference that might be drawn from a defendant's failure to avail himself of reasonable opportunities to remove himself from a planned crime and to alert the police is that the defendant's participation in the crime was a product of his own conscious wrongdoing and not a result of fear stemming from any threats of violence.

of Hedges, but the court determined that such coercion did not excuse Hedges's acts in participating in the bank robbery. The court had before it, and plainly considered, ample relevant evidence in making that determination. Hedges has turned what is, in essence, his disagreement with the district court's exercise of discretion into a claim that the district court "misunderstood" the scope of its discretionary authority. However, there is absolutely nothing in the record to support Hedges's supposition that the district court erroneously believed it lacked the authority to depart downwardly based on coercion and duress. "[W]hen nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." *United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999).

For the reasons set forth above, this court concludes that Hedges has failed to demonstrate the deficient performance of Hawthorne and the resulting prejudice required to sustain a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687. Hedges is therefore not entitled to any relief based on these claims.

## C.    Claims Related to Probation Officer and PSI

Hedges alleges various infirmities in the manner in which the PSI in his case was prepared by the United States Probation Officer and contends that these infirmities resulted in his receiving a longer sentence than he otherwise would have received. Doc. No. 1 at 8-9. His specific claims in this regard are that his probation officer (1) failed to meet with him in preparing the PSI; (2) failed to address his mental and emotional health in the PSI; (3)

30

failed to use the Montgomery District Probation Office form in preparing the PSI; and (4) improperly included his codefendant Kahler's work history in the PSI.  *Id*.  As substantive claims, these matters are barred by waiver provision in the plea agreement, pursuant to which Hedges waived his rights to challenge his conviction or sentence on direct appeal or in a collateral proceeding except on grounds of ineffective assistance of counsel and prosecutorial misconduct.   An appeal waiver or collateral-attack waiver is valid if a defendant enters into it knowingly and voluntarily.  *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350-55 (11th Cir. 1993).  In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases).  To enforce such a waiver, the government must demonstrate either that (1) the district court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.  Here, there is no indication in the pleadings or other records before this court that Hedges's waiver was anything but knowing and voluntary and as stated in the written plea agreement.  As noted in Part II.B.5 of this Recommendation, *supra*, there was nothing ambiguous or unclear about the waiver provision, and Hedges acknowledged during his plea colloquy that he fully understood the waiver.  Thus, the waiver provision bars Hedges from obtaining review of his substantive claims in this § 2255 proceeding.

Hedges suggests in his § 2255 motion that Hawthorne rendered ineffective assistance

of counsel when he failed to object to the probation officer's alleged failure to address his mental and emotional health in the PSI. Doc. No. 1 at 8-9. However, the PSI does address these matters, stating, "The defendant has no known documented history of mental or emotional issues." Doc. No. 22-1 at p. 7, ¶ 35. If Hedges does have a documented history of mental or emotional issues, he does not present evidence of such in his § 2255 motion.[24]

As to his claim that his probation officer failed to meet with him in preparing the PSI, Hedges's probation officer, J. Blake Tolbert, indicated in the PSI that he met with Hedges for a presentence interview (during which Hedges fully acknowledged his guilt regarding the instant offense). Doc. No. 22-1 at p. 4, ¶ 10. Moreover, Tolbert submitted an affidavit to this court in which he avers that he conducted the presentence interview with Hedges in September 2008. Doc. No. 21-11. Finally, Hedges has not cited, and research does not reveal, any case law from the Supreme Court, the Eleventh Circuit, or other circuits supporting the proposition that a defendant has an absolute right to be interviewed by a probation officer prior to completion of the PSI. *See United States v. Martinez*, 322 F. App'x 684, 686 (11th Cir. 2009) (noting the defendant's failure to cite to any case supporting such a proposition).

As to his remaining allegations, Hedges has not shown that Tolbert was required to use the Montgomery District Probation Office form in preparing the PSI, nor has he shown

---

[24] At the plea hearing, the court asked Hedges if he had been treated recently for any mental illness or addiction to narcotic drugs, and Hedges responded, "No." Doc. No. 4-1 at 4.

32

what part of Kahler's work history was improperly included in the PSI.  In any event, with regard to these allegations as well as the above-discussed allegations, Hedges fails to establish that he was indeed prejudiced by any infirmities in the preparation of the PSI or purported deficiencies in the PSI itself.  He was sentenced in accordance with the terms of his plea agreement (at the low end of the applicable guideline range) and, as indicated above in this Recommendation, was allowed to argue fully in support of his motion for a downward departure based on coercion and duress.  Hedges fails to make a convincing case that the alleged infirmities in the preparation of his PSI resulted in his receiving a sentence longer than he otherwise would have received.  Consequently, these claims entitle him to no relief.  Because he has not demonstrated prejudice, he is likewise not entitled to relief to the extent he premises any claims of ineffective assistance of counsel on Hawthorne's failure to object to the alleged infirmities in the preparation of his PSI or to the purported deficiencies in the PSI.  *See Strickland*, 466 U.S. at 687.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Hedges be denied, because the claim therein entitles him to no relief.

It is further

ORDERED that the parties are DIRECTED to file any objections to the Recommendation **on or before March 20, 2012**.  Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 6th day of March, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE